# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| RICHARD FUIT and KIMBERLY FUIT,<br><br>Plaintiffs,<br><br>v.<br><br>EXTREME PRODUCTS GROUP, L.L.C., a Delaware corporation; BIG 5 CORPORATION, dba BIG 5 SPORTING GOODS; and XIAMEN HONG DAO TECHNOLOGY CO., LTD., a/k/a FITMASTER,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT**<br><br>Case No. 1:16-CV-0035<br><br>Judge Robert J. Shelby |
| BIG 5 CORPORATION, d/b/a BIG 5 SPORTING GOODS,<br><br>Cross-Claim Plaintiff,<br><br>v.<br><br>EXTREME PRODUCTS GROUP, L.L.C.,<br><br>Cross-Claim Defendant. | |

Richard and Kimberly Fuit brought claims after an allegedly defective inversion table injured Mr. Fuit. The Fuits sued Extreme Products, Solo Sports, and Big 5, alleging that each of the three is a "designer, marketer, distributor and/or seller" of the inversion table at issue. Before the court are three Motions for Summary Judgment: (1) Extreme Products moves for summary judgment on both the Fuits' claims against it and Big 5's cross-claim, arguing it is not liable for any defect in the inversion table because it did not manufacture, design, or sell the table and it is

not liable as Solo Sports's successor;[1] (2) the Fuits move for judgment on the issue of whether Extreme Products is liable as a successor to Solo Sports;[2] and (3) Big 5 seeks summary judgment that Extreme Products is Solo Sports's successor and thus contractually required to defend and indemnify Big 5.[3] For the reasons that follow, the court grants in part and denies in part Extreme Products's Motion. The Fuits' Motion and Big 5's Motion are both denied.

## BACKGROUND

This case is about which, if any, party is liable for the Fuits' damages stemming from an alleged defect in the inversion table. Solo Sports, with input from Extreme Products, worked with manufacturer Xiamen Hong Dao Technology to design, engineer, test, and assemble the table in China.[4] Extreme Products was an independent sales representative for Solo Sports, although its lone member, Glenn Griffin, at times represented to clients that he was an officer of Solo Sports.[5] Solo Sports paid Extreme Products for sales of the inversion tables.[6] Big 5 ordered the inversion table at issue from Solo Sports in October 2010, and Mr. Fuit bought the table from Big 5 in March 2011.[7]

In 2013, Solo Sports went out of business, transferred several of its assets to Extreme Products, and asked Extreme Products to take over its inventory. Big 5 then asked Extreme Products to fulfill its existing purchase orders with Solo Sports, and Extreme Products agreed to do so.[8]

---

[1] Dkt. 47.
[2] Dkt. 63.
[3] Dkt. 64.
[4] Dkt. 47 at 13.
[5] Dkt 47, Ex. 10 at 101; Dkt. 62, Ex. 2 at 2.
[6] Dkt 47, Ex. 5 at 31; Dkt. 62, Ex. 3 at 15–20.
[7] Dkt. 47, Ex. 1.
[8] *Id.* at 11–13.

Several years after the Fuits bought the table, it broke while Mr. Fuit was using it, and he suffered severe injuries. The Fuits filed suit against Big 5; Solo Sports and its former president; Extreme Products; and Xiamen Hong Dao Technology.[9] At issue in the pending Motions are the Fuits' claims against Extreme Products and Big 5's cross-claim.

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact" and the moving party is "entitled to judgment as a matter of law."[10] A fact is material if it "might affect the outcome of the suit under the governing law," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[11] In reviewing a motion for summary judgment, the court will "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party."[12] "Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another."[13]

## ANALYSIS

The court first addresses whether Extreme Products is potentially liable as a designer, manufacturer, or seller of the inversion table, and then turns to the issue of successor liability.

### I. Passive retailer doctrine

Extreme Products argues it is not liable because it did not manufacture, distribute, or sell the inversion table and is therefore outside the bounds of Utah's strict products liability laws. This argument was initially based on the passive retailer doctrine, which relieves retailers of

---

[9] The Fuits voluntarily dismissed their claims against Solo Sports and its former president in August 2016.
[10] Fed. R. Civ. P. 56(a).
[11] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[12] *Pirkheim v. First Unum Life Ins.*, 229 F.3d 1008, 1010 (10th Cir. 2000).
[13] *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979).

3

liability if they did not participate in the manufacture or design of a defective product and the manufacturer is named in the suit.[14] After Extreme Products filed its opening brief, the Utah Supreme Court held in *Bylsma v. R.C. Willey* that Utah does not recognize the passive retailer doctrine.[15] Under *Bylsma*, strict liability applies to "every 'seller' of the product—manufacturers, wholesalers, retailers, and any other party involved in the product's chain of distribution."[16] Extreme Products acknowledges the Utah Supreme Court rejected the passive retailer doctrine, but nevertheless argues it is not liable because it does not fit in any of the roles listed in *Bylsma*. As the moving party, Extreme Products bears the burden of showing no genuine dispute of material fact exists as to any of the roles.

Extreme Products first argues it is not a "seller" of the inversion table because it only received a commission for the sale. The court need not decide whether an entity that receives a commission is a "seller" under *Bylsma*, because a dispute of fact exists concerning how and why Extreme Products was actually compensated: by commission for the sale of the table, or by profit-sharing for its input during the design and manufacturing stage.[17] This factually dependent issue is material to determining whether Extreme Products was a "seller" under *Bylsma*.

Additionally, a dispute of fact exists about the extent to which Extreme Products participated in the design and manufacture of the inversion table. Extreme Products contends it only gave input on the decision to initiate a line of fitness products and made three small design changes to the table's footplate, spring-loaded pull pin, and padding.[18] In contrast, the Fuits

---

[14] *Bylsma v. R.C. Willey*, 2017 UT 85, ¶ 12, — P.3d —.

[15] *Id.* ¶ 2.

[16] *Id.* ¶ 23; *see also id.* ¶ 12 ("[R]etailers like R.C. Willey—along with all others in a product's chain of distribution—are strictly liable for breaching their duty not to sell a dangerously defective product.").

[17] Dkt 47, Ex. 5 at 31; Dkt. 62, Ex. 3 at 15–20.

[18] Dkt. 75 at 5; Dkt. 47, Ex. 10 at 31, 107.

argue Extreme Products was a collaborator through the entire chain of production.[19] The Fuits point to, among other things, deposition testimony in which Griffin stated the decision to start producing inversion tables was "a collective effort" in which he provided Solo Sports with information about inversion tables from a prior company he worked for.[20] Griffin also stated that he "would certainly give his feedback" in most cases on design matters.[21] Based on the evidence before the court, a reasonable jury could conclude Extreme Products was a manufacturer or otherwise "involved in the product's chain of distribution."[22]

These factual disputes are material and preclude judgment as a matter of law. Extreme Products's Motion for Summary Judgment on the issue of strict products liability is denied.[23]

## II. Successor liability

Extreme Products, the Fuits, and Big 5 all filed Motions for Summary Judgment on the issue of successor liability. The Fuits and Big 5 argue that Extreme Products is the successor of Solo Sports, which contractually agreed to defend and indemnify Big 5 against claims arising out of any personal injury resulting from a defect in the inversion table. The Fuits argue that, as a result, Extreme Products is liable to them for damages, and Big 5 argues that Extreme Products has assumed Solo Sports's duty to defend and indemnify it against the Fuits' claims. Extreme Products relies on the general rule that a successor is not liable for its predecessor's defective products, and argues that no exceptions to that rule apply to this case. The Fuits and Big 5 argue one exception to the general rule applies as a matter of law and that issues of fact preclude summary judgment as to three other exceptions.

---

[19] Dkt. 62, Ex. 3 at 83–87.
[20] *Id.*
[21] *Id.* at 86.
[22] *Bylsma*, 2017 UT 85, ¶ 23.
[23] Dkt. 47.

A. **Choice of law**

The successor liability issue presents a choice-of-law question, as the approach differs among the states implicated in this case: Utah, where the Fuits reside; California, where Big 5 is domiciled; and Arizona and Delaware, where Extreme Products is domiciled.

In general, the law "does not impose liability on a successor corporation that purchases the assets of a predecessor in an arm's length transaction."[24] Utah, Arizona, and Delaware have adopted the Restatement (Third) of Torts, which recognizes exceptions to this rule where

> (1) there is an express or implied agreement of assumption, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is a mere continuation of the seller, or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts.[25]

California is the only state at issue that also recognizes the product line exception, in which a party that acquires a business and continues the output of its line of products under certain circumstances assumes strict liability for defects in those products.[26]

When presented with a conflict between different states' laws, the court applies the choice-of-law principles of the forum jurisdiction.[27] Utah applies the "most significant relationship" test to determine which state's law should apply to an issue.[28] For tort claims, Utah law looks to "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is

---

[24] *Nelson v. Tiffany Indus., Inc.*, 778 F.2d 533, 535 (9th Cir. 1985).

[25] *Ray v. Alad Corp.*, 560 P.2d 3, 7 (Cal. 1977); *see also* Restatement (Third) of Torts: Prod. Liab. § 12 (1998).

[26] *Ray*, 560 P.2d at 11.

[27] *Yoder v. Honeywell Inc.*, 104 F.3d 1215, 1219 (10th Cir. 1997).

[28] *Waddoups v. Amalgamated Sugar Co.*, 2002 UT 69, ¶ 14, 54 P.3d 1054.

centered."²⁹ The court must analyze these factors "according to their relative importance with respect to the particular issue."³⁰ Because the issue of successor liability in this case centers around the relationship between Solo Sports and Extreme Products, the court finds the last two factors to be most helpful.

Extreme Products is a Delaware LLC with its principal place of business in Arizona. Solo Sports was a California corporation with its headquarters in California. The transfer of Solo Sports's assets to Extreme Products and meetings between officers of the two companies occurred in California, as did the issuance of invoices and replacement purchase orders and the changing of labels on products. Additionally, the products at issue during the transition from Solo Sports to Extreme Products were shipped to and from California. Because the relationship between Solo Sports and Extreme Products was centered in California, the court finds that California has the most significant relationship to the issue of successor liability and thus California law applies to determine whether Extreme Products is liable under either the Restatement exceptions or the product line exception.

Extreme Products argues that as a matter of law, it is not liable under any of the successor liability exceptions. The Fuits and Big 5 argue that Extreme Products is liable as a matter of law under the product line exception, and in the alternative, issues of material fact remain as to three other exceptions, thereby precluding judgment as a matter of law.

**B. Product line exception**

The product line exception applies where the moving party shows:

(1) the virtual destruction of the plaintiff's remedies against the original manufacturer caused by the successor's acquisition of the business, (2) the successor's ability to assume the original manufacturer's risk-spreading role, and

---

²⁹ *Id.* ¶ 18 (citing Restatement (Second) Conflict of Laws § 145(2) (1971)).

³⁰ *Id.* (citation omitted).

(3) the fairness of requiring the successor to assume a responsibility for defective products that was a burden necessarily attached to the original manufacturer's good will being enjoyed by the successor in the continued operation of the business.[31]

The first element requires "not only that the plaintiff lack an effective remedy against the predecessor, but also that 'the successor corporation actually [have] played some role in curtailing or destroying the plaintiffs' remedies.'"[32]

In attempting to show that Extreme Products played a role in destroying the Fuits' remedies, the Fuits and Big 5 rely on *Kaminski v. Western MacArthur Co.*[33] In that case, the California Court of Appeal stated that even where a manufacturer's business would have failed regardless of whether the successor stepped in, the first element was satisfied because "the fact is [the successor] did step in, take the assets and goodwill of [the predecessor] and cause it to dissolve . . . . and in the process extinguished the [plaintiffs'] remedies."[34] The Fuits and Big 5 argue the same scenario occurred here—regardless of whether Solo Sports was going out of business anyway, Extreme Products stepped in, took over the assets, and played a role in destroying the Fuits' remedies.

However, such a rule—that any time a successor takes over the predecessor's assets, it has played a role in destroying the plaintiff's remedies—would essentially swallow the causation requirement. Rather, the product line exception requires more than mere acquisition.

In fact, there was more than mere acquisition in *Kaminski* because the successor corporation in that case "exercised complete control" over the predecessor.[35] The California

---

[31] *Ray*, 560 P.2d at 8–9.

[32] *Nelson*, 778 F.2d at 536 (alteration in original) (citation omitted).

[33] 220 Cal. Rptr. 895 (Cal. Ct. App. 1985).

[34] *Id.* at 903.

[35] *Id.*

Court of Appeal noted in a later case that the successor in *Kaminski* "force[d] [the predecessor] to dissolve by exercising its financial power as a creditor and its right to dictate policy to the directors of the corporation," thereby satisfying the causation requirement.[36] This requirement was also satisfied in *Ray v. Alad*, where the sales contract required dissolution of the predecessor.[37] However, the required causation is not present where a predecessor voluntarily goes out of business, because "[e]ven if there had been no sale of assets . . . [the plaintiffs] would not be in any better position" to recover against the successor.[38]

The Fuits and Big 5 presented no evidence that Extreme Products's purchase agreement required Solo Sports to dissolve, or that Extreme Products wielded financial power over Solo Sports in a way that made the dissolution essentially involuntary. Without more, the fact that Solo Sports transferred some of its assets to Extreme Products does not mean Extreme Products caused the virtual destruction of the Fuits' remedies against Solo Sports. The court concludes the Fuits and Big 5 have not met their burden to show they are entitled to judgment as a matter of law on the application of the product line exception. Rather, the lack of a genuine dispute of material fact as to the causation element means Extreme Products is entitled to judgment as a matter of law that the product line exception does not apply.

### C. Other exceptions

Extreme Products also argues the court should grant summary judgment on the issue of successor liability because none of the exceptions listed in the Restatement (Third) of Torts applies as a matter of law. In opposition, the Fuits and Big 5 contend a genuine dispute of material fact exists as to whether Extreme Products is liable as Solo Sports's successor under

---

[36] *Stewart v. Telex Comm'ns, Inc.*, 1 Cal. Rptr. 2d 669, 675 (Cal. Ct. App. 1991) (citation omitted).
[37] 560 P.2d at 6.
[38] *Nelson*, 778 F.2d at 537.

three of the Restatement exceptions: de facto merger, implied assumption of liabilities, and mere continuation.

When determining whether a de facto merger occurred, courts look to the existence of four factors:

> (1) There is a continuation of the enterprise of the seller corporation, so that there is continuity of management, personnel, physical location, assets, and general business operations.
> (2) There is a continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholders of the seller corporation so that they become a constituent part of the purchasing corporation.
> (3) The seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible.
> (4) The purchasing corporation assumes those obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation.[39]

"No one of these factors is either necessary or sufficient to establish a de facto merger," but all are "indicators that tend to show a de facto merger."[40]

In this case, Solo Sports transferred at least some of its assets to Extreme Products and then ceased its business operations. Additionally, there was at least some continuation of Solo Sports's enterprise, as Griffin had at times presented himself as a vice president of Solo Sports, and Extreme Products continued to sell the same products. Extreme Products also assumed Solo Sports's obligations with regard to delivering the inversion tables, which allowed for the uninterrupted continuation of Solo Sports's normal business operations. The court concludes these facts are sufficient to at least raise a genuine issue of fact concerning whether a de facto merger occurred.

---

[39] *United States v. Sterling Centrecorp Inc.*, 960 F.Supp.2d 1025, 1042 (E.D. Cal. 2013).

[40] *Id.* (citations omitted).

Because the court concludes that a genuine dispute of material fact exists as to whether there was a de facto merger, it need not address the other exceptions. A genuine dispute of material fact on the issue of de facto merger precludes summary judgment on the question of whether Extreme Products is a successor to Solo Sports and is thus liable for Solo Sports's defense and indemnification of Big 5.[41]

## CONCLUSION

An issue of fact remains as to whether Extreme Products is a seller, designer, or manufacturer of the inversion table and thus strictly liable to the Fuits. Additionally, the court concludes that, as a matter of law, Extreme Products is not liable as a successor to Solo Sports under the product line exception, but a genuine dispute of material fact remains as to whether a de facto merger occurred. Thus, the court GRANTS IN PART and DENIES IN PART Extreme Products's Motion for Summary Judgment.[42] The Fuits' Motion for Summary Judgment[43] and Big 5's Motion for Summary Judgment are DENIED.[44]

**SO ORDERED** this 13th day of April, 2018.

BY THE COURT:

ROBERT J. SHELBY
United States District Judge

---

[41] Extreme Products argues that even if the court concludes it is Solo Sports's successor, liability attaches only for torts and not for the seller's contracts, so Extreme Products is not liable for Solo Sports's indemnification clause with Big 5. Because the court concludes a factual issue exists as to whether Extreme Products is Solo Sports's successor, the court need not reach this issue.

[42] Dkt. 47.

[43] Dkt. 63.

[44] Dkt. 64.